[Cite as *In re P.R.*, 2017-Ohio-5557.]

STATE OF OHIO    )    IN THE COURT OF APPEALS
          )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT  )

IN RE: P.R.            C.A. No.   28503


                APPEAL FROM JUDGMENT
                ENTERED IN THE
                COURT OF COMMON PLEAS
                COUNTY OF SUMMIT, OHIO
                CASE No.  DN 15-3-167

DECISION AND JOURNAL ENTRY

Dated: June 28, 2017

CARR, Judge.

{¶1} Appellant, Randi R. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed her in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of P.R., born August 3, 2012. The child's father did not appeal from the trial court's judgment.

{¶3} Although CSB was involved briefly with Mother and P.R. during 2014 because Mother was homeless, no involuntary case was opened at that time. CSB filed this case because P.R. was removed from Mother's custody pursuant to Juv.R. 6 on March 14, 2015, after Mother overdosed on drugs and then two-year-old P.R. was found unsupervised next to Mother and a

burning candle. CSB also alleged concerns about domestic violence in Mother's home. P.R. was later adjudicated an abused and dependent child.

{¶4} Mother was accepted into the juvenile court's Family Reunification through Recovery Court ("FRRC") program, which provided Mother with specialized and intensive assistance to address the substance abuse and mental health components of the case plan. Through the assistance of the FRRC team, Mother made significant progress on the reunification goals of the case plan during the summer and fall of 2015. Her visits with P.R. were gradually expanded and the child was returned to her custody during November 2015.

{¶5} Less than six weeks later, however, P.R. was again removed from Mother's custody pursuant to Juv.R. 6 because Mother was involved in an altercation with her boyfriend and threatened to drive away with P.R. while she was under the influence of drugs or alcohol. During the second period of time that P.R. was removed from Mother's home, Mother made minimal progress on the case plan and continued to struggle with substance abuse, untreated mental health problems, and domestic violence.

{¶6} After P.R. was removed from Mother's custody at the end of 2015, Mother sporadically engaged in mental health and drug treatment, often as the result of involuntary hospitalizations. She worked with several different treatment professionals after her hospitalizations but did not fully engage in treatment with any of them. Mother completed an intensive outpatient treatment program to address her addiction to alcohol, opiates, and marijuana, but she did not complete the aftercare program. Without completing aftercare, her counselor opined that the likelihood that Mother would relapse was "[e]xtremely high." Mother entered another treatment program, but stopped coming after five sessions. Mother worked with

a recovery coach during this case, but eventually stopped all contact with her. Mother was later terminated from the FRRC program for noncompliance.

{¶7} Mother told the caseworker that she had stopped drug treatment because she was "too lazy[.]" Moreover, before dropping out of treatment, Mother admitted to the caseworker and one of her treatment providers that she had "gamed the system" because she had been using drugs throughout this case. The recovery coach and the caseworker also expressed concerns that Mother continued to exhibit erratic behavior throughout the time that they worked with her during 2016.

{¶8} Because Mother had stopped working on the case plan, CSB moved for permanent custody of P.R. Following a hearing on CSB's motion for permanent custody, the trial court found that P.R. could not or should not be returned to Mother's custody and that permanent custody was in the child's best interest. Consequently, it terminated Mother's parental rights. Mother appeals and raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE STATE FAILED TO PRESENT CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF [P.R.] PURSUANT TO O.R.C. 2151.414(D)[.]

{¶9} Mother argues that the trial court's decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated

abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that CSB satisfied the first prong of the test because Mother had failed to substantially remedy the conditions that caused P.R. to be placed outside the home. *See* R.C. 2151.414(E)(1). Mother does not dispute that finding but confines her challenge to the trial court's determination that permanent custody was in the best interest of P.R.

{¶11} When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the wishes and custodial history of the child, and the need for permanence in the child's life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶12} Mother's interaction with P.R. during this case was limited. Although Mother visited P.R. regularly, after the second removal of P.R. from Mother's custody, her visits were always supervised because Mother had not demonstrated a sustained period of sobriety and CSB continued to be concerned about her hostile and erratic behavior. The caseworker observed that, when Mother came to visits sober, she would behave appropriately and interact with P.R. When she was not sober, Mother would tend to sit in the corner with her boyfriend.

{¶13} After Mother missed a scheduled visit with P.R. on September 1, 2016, the caseworker went to her home. She discovered Mother in a disheveled state, exhibiting erratic and paranoid behavior, and rambling about someone trying to blow up her house. Mother was

again admitted to the hospital. The caseworker expressed concern that Mother was exhibiting the same type of behavior that she had exhibited when this case began 18 months earlier.

{¶14} The interaction between P.R. and her current kinship caregivers was positive and all of her needs were being met in that home. P.R. had lived in that same home for several months both times that she was removed from Mother's custody. P.R. was engaging in regular counseling, attending preschool, and had adjusted well to that stable family environment. Her current caregivers were interested in adopting her if CSB received permanent custody.

{¶15} Because P.R. was only four years old at the time of the hearing, the guardian ad litem spoke on her behalf. The guardian ad litem, who was part of Mother's FRRC team, testified that Mother had not made progress on resolving any of the problems that repeatedly brought P.R. into CSB custody. With her current caregivers, however, the child's needs were consistently being met and she had adjusted well to that home. The guardian ad litem opined that permanent custody was in the best interest of P.R.

{¶16} P.R. was briefly removed from Mother's custody at the age of two because Mother was homeless. During this case, P.R. spent 20 months moving in and out of Mother's custody. By the end of that period that represented nearly half of P.R.'s life, Mother had made little progress resolving any of her parenting problems and P.R. was in need of a legally secure permanent placement. The trial court reasonably concluded that permanent custody was the only means to provide the child with a stable permanent home.

{¶17} Mother has failed to demonstrate that the trial court's decision was not supported by clear and convincing evidence. Her assignment of error is overruled.

III.

{¶18} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

RANDALL C. BRAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

MICHAEL WARTKO, Attorney at Law, for Appellee.

JOE KERNAN, Guardian ad Litem.